FILED

2011 Nov-14  AM 10:40
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MARY A. HAMMOND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 11-G-1137-NE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Mary A. Hammond, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Disability benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;

(2)    whether she has a severe impairment;

(3)    whether her impairment meets or equals one listed by the Secretary;

(4)    whether the claimant can perform her past work; and

2

(5)     whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

        In the instant case,  ALJ Patrick R. Digby determined the plaintiff met the first two tests, but concluded that while she has an impairment or impairments considered "severe," her impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 14, 17].   The ALJ found the plaintiff unable to perform her past relevant work.  Once it is determined that the plaintiff cannot return to her prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony."  Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

4

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

### THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the  Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical

question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

          In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain

testimony is accepted as true, the only relevant issue would be whether that testimony was

properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

ALJ Digby found that the plaintiff "has the following severe impairment:

spine pain with spasms secondary to arteriovenous malformation. . . ."  [R. 17].   On

January 2, 2007, Kenneth D. Willis, M.D., diagnosed the plaintiff with:

> Chronic intractable low back pain and bilateral right greater than left lower
> extremity pain syndrome status post arteriovenous malformation
> lumbosacral spine with right lumbosacral neural foraminal soft tissue
> stenosis and nerve root entrapment and radicular injury, and secondary
> complex regional pain syndrome type I pain component.

[R. 224].  Dr. Willis performed two lumbar pain blocks, with the following results:

> After 30 minutes, the patient was re-evaluated and found to have complete
> resolution of pain to the low back, bilateral hips and right lower extremity.
> She was able to weight-bear ambulate without gait abnormality, dramatic
> warming of the bilateral feet and legs, resolved hyperesthesias to the
> dorsum of the right foot, resolved edema, negative straight leg raise on the
> right and myofascial tenderness lumbosacral spine was significantly
> reduced.  She was discharged stable with dramatically improved effect,
> complete resolution of depression noted preoperatively and was discharged
> stable, delighted with the degree of pain relief afforded by today's block
> therapy.

[R. 225].

On February 2, 2007, the plaintiff applied for a handicapped parking

placard.  Her treating physician, Nicole Scruggs, M.D., certified that she cannot walk two

hundred feet without stopping to rest, and is severely limited in her ability to walk due to

an arthritic, neurological, or orthopedic condition, and that her condition was long-term in

nature. [R. 254].   Treatment records from Dr. Scruggs from January 7, 2008, to July 22,

2008, show that the plaintiff complained of disabling pain (at least a 7/10 on seven office

visits), but stated her pain was 0/10 on two occasions. [R. 258-267].

On November 19, 2008, the plaintiff was seen by Cheng W. Tao, M.D., of

the Spine Neuro Center, for a five-year history of low back pain and bilateral leg pain,

worse on the right. [R. 381].

> She states the pain starts in her right buttock and radiates down to her right
> posterior thigh and calf and into her ankle and foot.  She has had multiple
> epidermal steroid injections with no relief.  She was diagnosed with a
> thoracolumbar arteriovenous malformation in Mobile but no treatment was
> recommended at that time.  She states she also has subjective weakness that
> is progressively worsening.  She also notes that her pain is progressively
> worsening.  She denies any bowel or bladder incontinence but she does
> report having some spasms in her back.  She also reports numbness and
> tingling down her right leg and into her foot.

Id.  On examination, her gait and station were normal, and she was able to ambulate on

her heels and toes without difficulty.  Id.  Range of motion was full in all joints, and she

had 5/5 strength throughout her left lower extremity.  In her right leg, muscle strength was

4/5. [R. 382].  Dr. Tao wanted to obtain an MRI of her thoracolumbar spine.

The November 24, 2008, MRI of her thoracic and lumbar spine showed:

> There are flow voids from multiple dilated, serpiginous, intradural vessels
> in the thoracolumbar spine, extending from approximately T10-L3.  They
> are not significantly changed in appearance, severity, or distribution relative
> to the prior study.  In particular, the more bulbous area posterior to the L1
> vertebral body suspicious for a venous aneurysm is stable. There is no
> evidence of hemorrhage or infarct.

The osseous structures of the thoracic spine are in anatomic alignment with normal marrow signal.  The intervertebral discs are well hydrated with preservation of the intervertebral disc heights.

At T9/10, there is a small left posterolateral disc protrusion which encroaches upon the left neural foraminal canal, causing mild left-sided neural foraminal narrowing.  There is no significant right-sided neuroforaminal narrowing or spinal canal stenosis.

There is no other significant or focal disc pathology, spinal canal stenosis or neural foraminal narrowing.

[R. 383].  The impression was stable thoracolumbular dural AV fistula with a small disc protrusion at T9/10.

On February 2, 2007, the plaintiff was seen by Shelinder Aggarwal, M.D., at the request of the Commissioner.  Dr. Aggarwal noted that the plaintiff told him:

Pt has been having problems with low back pain and leg pain for many years.  She has a diagnosis of arteriovenous malformation in the thoracal [sic] and lumbar spine with degenerative arthritis and disc disease.  She follows Dr. Dean Willis and receives numerous injection therapies with some benefit.  She has difficulty bending, lifting, sitting and standing for prolonged periods.  She has difficulty walking as well.  She notes she is limited in her mobility because of her pain. She rates her pain as a 10/10 currently, and at its worse a 10/10. She has associated muscle spasms.  She is taking numerous medications for her condition including Methadone.

[R. 237].  On examination, Dr. Aggarwal found reduced range of motion in her lumbosacral spine, and an antalgic gait with decreased stance phase time on the right lower extremity. [R. 238].  His impression was chronic low back pain due to arthritis and disc disease, lumbosacral radiculitis, and arteriovenous malformation in the thoracic and lumbar spine. [R. 239].  Dr. Aggarwal found the following restrictions:

9

lifting no greater than 10lbs, sitting 30 minutes at a time, standing and walking 10 minutes at a time. It is my opinion pt's medical condition precludes her from gainful employment.

Id.

      The ALJ gave Dr. Aggarwal's opinion "little weight as it is an issue reserved for the Commissioner, and such opinion is sorely lacking in his objective findings of his one-time examination." [R. 19]. He also found the plaintiff's testimony not credible to the extent it was inconsistent with his assessment of the plaintiff's residual functional capacity:

> The claimant asserts she is disabled due to lower back pain with radiculopathy. The undersigned acknowledges the claimant has been diagnosed with arteriovenous malformation of the thoracic and lumbar spine. However, the evidence shows the functional limitations imposed [by] this impairment are not severe enough to be disabling. Physical examinations performed in October and November 2006 revealed the claimant had a normal gait and no sensory deficits and ambulated independently with a steady gait. Further, at the hearing, she admitted she did not use a cane to walk. There is no evidence this condition causes any incontinence and range of motion in the hip, knee, ankle and foot is within normal limits. Although the claimant testified at the hearing she was only able to do a few limited chores around the house, during her evaluation with Dr. Haney [sic – apparently the ALJ is referring to Jon Rogers, Ph.D., Commissioner's consultative psychological examiner] she reported she washed clothes, cooked meals, washed dishes, cleaned the house and paid bills. The undersigned notes this evaluation took place only six months earlier and based on the medical evidence of record, is a more accurate representation of the claimant's activities of daily [living]. Therefore, while the claimant may have some functional limitation as a result of her back and leg pain, the evidence shows this condition does not impose limitations as severe as she has alleged.

[R. 18].

In applying the Eleventh Circuit's pain standard, the ALJ found that the plaintiff has medically determinable impairments that could reasonably be expected to produce her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with his residual functional capacity assessment.  [R. 18].   This conclusion is not supported by substantial evidence.

The court notes the medical testimony of muscle spasms.  This court has repeatedly held that spasms are objective evidence of pain itself.  The Eleventh Circuit's pain standard is unquestionably met.  The ALJ was not even close to correct when he held the plaintiff was not credible and therefore not disabled.

In rejecting the opinion of Dr. Aggarwal, the ALJ stated he was giving it little weight because "it [disability] is an issue reserved for the Commissioner. . . ." [R. 19].  The Social Security Regulations do state that "[o]pinions on some issues. . . are not medical opinions. . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(e).  Even so, the expert testimony[1] of a consultative examiner still must be considered.  Too many ALJs interpret this rule as permitting them to decide such an issue without evidence.  The

---

[1]  While not applicable in administrative hearings before the Commissioner, the Federal Rules of Evidence recognize that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Fed. R. Evid. 704(a).

substantial evidence requirement for support of an ALJ's decision is still the law.  Such

testimony may not alone be binding on the ALJ, but here it is because there is no evidence

to the contrary.  This kind of expert testimony must always be considered and weighed by

the ALJ.

       Moreover, the medical evidence shows a "longitudinal history of

complaints and attempts at relief" that support the plaintiff's pain allegations.  See SSR

96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating

an individual's attempts to seek medical treatment for pain or other symptoms and to

follow that treatment once it is prescribed lends support to an individual's allegations of

intense or persistent pain or other symptoms for the purposes of judging the credibility of

the individual's statements.").  As Judge Allgood observed in Lamb v. Bowen:  "[T]he

record is replete with evidence of a medical condition that could reasonably be expected

to produce the alleged pain.  No examining physician ever questioned the existence of

appellant's pain.  They simply found themselves unable to cure the pain."  847 F.2d 698

(11th Cir. 1988).

       Additionally, the activities of daily living recited by the ALJ do not support

a finding that the plaintiff's pain testimony is not true.  The ability to perform the limited

activities noted by the ALJ does not rule out the presence of disabling pain.  The ability to

watch television, do occasional shopping, or perform other sporadic activities does not

mean the plaintiff is not disabled. In this circuit it has been recognized that "participation

in everyday activities of short duration, such as housework or fishing" does not disqualify

a claimant from disability.  <u>Lewis v. Callahan</u>, 125 F.3d 1346, 1441 (11th Cir. 1997).  As

has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic
> or an amputee.  Similarly, shopping for the necessities of life is not a
> negation of disability and even two sporadic occurrences such as hunting
> might indicate merely that the claimant was partially functional on two
> days.  <u>Disability does not mean that a claimant must vegetate in a dark room
> excluded from all forms of human and social activity</u>. . . . It is well
> established that sporadic or transitory activity does not disprove disability.

<u>Smith v. Califano</u>, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability

to engage in gainful employment that is the key, not whether a plaintiff can perform

minor household chores or drive short distances.  In <u>Easter v. Bowen</u>, the court observed

as follows:

> Moreover, an applicant need not be completely bedridden or unable to
> perform any household chores to be considered disabled.  <u>See Yawitz v.
> Weinberger</u>, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to
> perform as required on a daily basis in the "sometimes competitive and
> stressful" environment of the working world.  <u>Douglas v. Bowen</u>, 836 F.2d
> 392, 396 (8th Cir.1987) (quoting <u>McCoy v. Schweiker</u>, 683 F.2d 1138,
> 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The <u>Easter</u> court further noted that "[e]mployers are

concerned with substantial capacity, psychological stability, and steady attendance . . . ."

867 F.2d at 1130 (quoting <u>Rhines v. Harris</u>, 634 F.2d 1076, 1079 (8th Cir.1980)).

        With this standard in mind, it is clear that the ALJ's articulated reasons for

rejecting the plaintiff's pain testimony are not supported by substantial evidence.

Therefore, the ALJ failed to satisfy the requirements of <u>Hale</u>.  The conclusion of that

court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons

for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

The plaintiff testified that her pain medication[2] causes drowsiness and affects her concentration. [R. 61].  She testified to having good days and bad days. [R. 58].  On good days she feels as if she has the flu, with her pain at a seven or eight out of 10. Id.  On bad days she sleeps all day. Id.   At the hearing, the vocational expert was questioned:

Q:     And we'll go through part of it.  First of all is a question everybody always asks, but Ms. Hammond does have arteriovenous malformation and chronic regional pain syndrome, so if the Judge were to find that her pain is moderately severe to severe, what affect would that have on her ability to maintain steady employment?

A:     With that type of pain, as listed, would preclude regular work activity.

Q:     And that was one of the reasons listed in 10-F.  Another one, [INAUDIBLE] side effects of concentration, difficulties directly associated with the medications Ms. Hammond has to take.  You were here and able to hear Ms. Hammond testify about the side effects of her medication.  If the Court were to find her testimony in this matter credible, as they did at the rehab services, what effect, if any, would that have on her ability to maintain steady substantial gainful activity?

A:     The testimony the Claimant gave would not be consistent with a return to work based on inability for concentration, persistence and pace.

_____

[2]  The Plaintiff's pain medications have included methadone, Lortab, oxycodone, Topomax, Lyrica, Maxalt and Robaxin.

Q:     I assume falling asleep on the job isn't exactly taken well either, is it?

A:     No, it's not.

Q:     And if the Judge would find credible the testimony that she sleeps two hours during a normal 8:00 to 5:00 work hour [sic], what would that do in her ability to maintain steady employment?

A:     Well, it would preclude work if it was during that time period.

*     *     *

Q:     If she'd have to take a break, as she testified, to get in a recliner or lay [sic] down for an hour or so during this period, I think her testimony was after every two or three hours she's like that for an hour or two, what [effect] does that have on her ability to maintain steady employment if she's having to lay [sic] down two hours a day?

A:     That would preclude work activities.

[R. 83-85].  Taking the plaintiff's testimony as true, the VE's testimony establishes disability without a doubt.


**CONCLUSION**

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 14 November 2011.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.